UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ELANCO ANIMAL HEALTH, A DIVISION OF ELI LILLY AND COMPANY, | ) ) ) | |
| Plaintiff, | ) | |
| | ) | 1:08-cv-386-RLY-TAB |
| vs. | ) ) | |
| ARCHER DANIELS MIDLAND COMPANY ANIMAL HEALTH & NUTRITION DIVISION and RED OAK CARRIERS, INC. | ) ) ) ) | |
| Defendants, | ) ) | |
| _____ | ) ) | |
| ARCHER DANIELS MIDLAND COMPANY ANIMAL HEALTH & NUTRITION DIVISION, | ) ) ) ) | |
| Cross-Claimant, | ) ) | |
| vs. | ) ) | |
| RED OAK CARRIERS, INC., ATLANTIC CARRIERS, INC. and ATLANTIC CARRIERS BROKERAGE, INC., | ) ) ) | |
| Cross-Defendants. | ) ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS COUNT III OF
PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Elanco Animal Health, a division of Eli Lilly and Company ("Lilly"),

filed its Amended Complaint against Defendant Archer Daniels Midland Company

1

Animal Health & Nutrition Division ("ADM") in this court on May 5, 2008.  Lilly's Amended Complaint includes claims of breach of contract, breach of express warranty, and strict liability.  Now before the court is ADM's Motion to Dismiss Count III [Strict Liability of ADM] of Plaintiff's Amended Complaint for Failure to State a Claim.  For the reasons set forth below, this motion is **GRANTED**.

I.      **Background**

Lilly markets Tylan® 40 premix, an animal feed additive designed to prevent and treat disease, as well as improve feed efficiency.  (Docket # 23 ("Amended Complaint")).  In May of 2006, Lilly entered into an Agreement for Processing with ADM.  (Docket # 23-2 ("Contract")).  Under this agreement, ADM mixes Granulated Tylosin Concentrate ("GTC"), the active ingredient, with other ingredients to produce Tylan® 40.  (Contract at 1).  Lilly ships the GTC to ADM, but ADM is responsible for procuring the other ingredients, including rice hulls.  (Contract at 2).

In January of 2007, ADM purchased rice hulls from a non-party supplier in Arkansas, for use in producing Tylan® 40 for Lilly.  (Amended Complaint ¶ 18).  The rice hulls were shipped from Arkansas to the ADM facility by truck.  (*Id.* ¶ 19).  Immediately prior to being used to ship the rice hulls, the truck transported a shipment of Froot Loops® cereal.  (*Id.* ¶ 20).  Lilly alleges that the truck was not cleaned properly between shipments, causing the rice hulls to become contaminated with cereal.  (*Id.* ¶ 22).  Lilly further alleges that the contaminated rice hulls were used by ADM to produce Tylan® 40, rendering thirteen lots of the product unmarketable.  (*Id.* ¶ 28).

2

Lilly asserts that ADM should be held strictly liable for the damages that Lilly has suffered or will suffer as a result of Lilly's product being contaminated with Froot Loops® cereal.  ADM argues that this claim should be dismissed because it does not meet the requirements of Indiana's Product Liability Act.[1]

## II.    Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Procedure authorizes the dismissal of claims for "failure to state a claim upon which relief may be granted."  Once the plaintiff adequately states a claim, the claim "may be supported by showing any set of facts consistent with the allegations in the complaint."  *Caldwell v. Jones*, 513 F. Supp. 2d 1000, 1003 (N.D. Ind. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1960 (2007)).  In making its determination, the court accepts the allegations in the complaint as true, and it draws all reasonable inferences in favor of the plaintiff.  *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1248 (7th Cir. 1997); *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996).  In accordance with this standard, the facts outlined above are accepted as Lilly alleges them.

## III.   Discussion

Indiana's Product Liability Act provides that a person who "puts into the stream of commerce any product in a defective condition" is strictly liable for physical harm to persons or property caused by that product.  Ind. Code § 34-20-2-1.  "Physical harm" is

---

[1]The Agreement for Processing between Lilly and ADM contained a choice-of-law provision, which provides that the Agreement will be governed by Indiana state law.  (Contract at 14).  The parties do not dispute that Indiana law governs this dispute.

defined as including "sudden, major damage to property."  Ind. Code § 34-6-2-105.

ADM argues that Lilly's strict liability claim should be dismissed because there was no

damage to "other property," there was no sudden, major damage to property, and the

product at issue was never put into the stream of commerce.  The court addresses each of

these issues in turn.

### A.    Damage to "Other Property"

The Indiana Supreme Court "has consistently interpreted the [Indiana] Product

Liability Act to bar a tort action where no damage to person or *other property* is present."

*Progressive Ins. Co. v. General Motors Corp.*, 749 N.E.2d 484, 488 (Ind. 2001) (*citing*

*Reed v. Central Soya Co.*, 621 N.E.2d 1069, 1074-75 (Ind. 1993); *Martin Rispens Son v.*

*Hall Farms, Inc.*, 621 N.E.2d 1078, 1089 (Ind. 1993); *Interstate Cold Storage, Inc. v.*

*General Motors Corp.*, 720 N.E.2d 727, 731 (Ind. Ct. App. 1999)) (emphasis added).

"Other property" is defined as that which is "wholly outside and apart from the product

itself."  *I/N Tek v. Hitachi, Ltd.*, 734 N.E.2d 584, 588 (Ind. Ct. App. 2000).

In the instant case, Lilly argues that the contaminated rice hulls were the defective

product, and that the "other property" damaged was the GTC that was mixed with the

contaminated rice hulls.  However, the Agreement for Processing states that ADM is

responsible for furnishing all of the inactive ingredients for Tylan® 40, including rice

hulls.  (Contract at 2).  Lilly does not pay ADM for the individual component ingredients,

but only for the finished product.  (*Id.* at 3).  Under this type of arrangement, the

"product" is the item purchased by the plaintiff, not the item furnished by the defendant.

*Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 155 (Ind. 2005).  The consequences of a defective component harming a finished product "are within the rationale of the economic loss doctrine,"[2] and are therefore best left to contract law remedies.  *Id.*; *see also E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986).

Lilly cites *Paper Mfrs. Co. v. Rescuers, Inc.*, to support its argument that there was damage to "other property."  60 F. Supp. 2d 869, 879 (N.D. Ind. 1999).  However, the facts of *Paper Mfrs.* are not analogous to the instant case.  In *Paper Mfrs.*, the plaintiff produced pouches for a medical supply company, which used the pouches to package bone cement.  The plaintiff purchased ink from the defendant for use in making the pouches.  The ink caused the seal of the pouch to fail, contaminating the bone cement.  *Id.* at 876.  Although the defendant tried to argue that the pouches with the bone cement in them were the product, the court held that the product was the pouches themselves, and that therefore other property (the bone cement) was damaged.  *Id.*

*Paper Mfrs.* is very different from the instant case because the two items, the pouches and the bone cement, could stand alone as separate products.  The same cannot be said for the rice hulls and the GTC in this case.  Additionally, the plaintiff in *Paper Mfrs.* was not responsible for placing the bone cement in the pouches; this was done by the medical supply company.  *Id.*  The pouches were sold by the plaintiff as a finished

---

[2]Economic loss has been defined by Indiana Courts as "the diminution in value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold."  *Reed*, 621 N.E.2d at 1074 (citations omitted).

5

product, not as a component part.

The court finds that the product at issue in this case is Tylan® 40 premix.  As the only damage was to the product itself, and there were no persons or other property involved, Lilly is barred from asserting a claim under Indiana's Product Liability Act.

**B.      Sudden, Major Damage**

Physical harm, as required under Indiana's Product Liability Act, includes sudden, major damage to property.  Ind. Code § 36-6-2-105.  ADM argues, and Lilly disputes, that improperly mixing GTC with contaminated ingredients is not the type of harm contemplated by the Act.  However, even if the court were to agree with Lilly that the damage suffered was sudden and major, Lilly's strict liability claim still could not stand. Indiana court's have held that "even 'sudden, major damage' is insufficient to support recovery under the [Product Liability] Act when the only damage alleged is to the product itself."  *I/N Tek*, 734 N.E.2d at 587 (*citing Interstate Cold Storage*, 720 N.E.2d at 731). As the court has found that the only damage was to the Tylan® 40 itself, it is irrelevant whether the damage was sudden and major, as pertaining to this motion.

**C.      Stream of Commerce**

The Indiana Product Liability Act only pertains to those who put defective products into the stream of commerce.  Ind. Code § 34-20-2-1.  As the defective product in this case, the contaminated Tylan® 40 premix, has never been marketed, Lilly cannot establish that ADM put a defective product into the stream of commerce, and therefore cannot allege a claim under the Product Liability Act.

6

## IV.    Conclusion

For the foregoing reasons, ADM's Motion to Dismiss Count III of Plaintiff's

Complaint (Docket # 48) is **GRANTED**.

**SO ORDERED** this __4th__ day of September 2008.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies To:

Richard S. Baron
FOLEY BARON & METZGER,PLLC
rbaron@fbmlaw.com

Amanda C. Couture
DELANEY & DELANEY
acouture@delaneylaw.net

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Brian H. Phinney
FOLEY BARON & METZGER, PLLC
bphinney@fbmlaw.com

Thomas E. Schulte
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
tschulte@scopelitis.com

Daniel David Trachtman
WOODEN & MCLAUGHLIN LLP
dtrachtman@woodmaclaw.com

7